Per Curiam.

The principal issue in this cause is whether relators attained the status of provisional civil service employees with the rights incident to such status. The board attacks relators’ position on several fronts.
The board’s first contention is that the Court of Appeals erred in finding that the test administered to relators was in fact a noncompetitive examination. The board argues that the provisional appointments were based on a questionnaire and not on a noncompetitive examination as required by Section 143.23, Revised Code.
Relators were required to submit a form, designated “Form 45, Revised,” provided by the Department of State Personnel, which form is labelled as Noncompetitive Examination for Provisional Appointment. This form contains questions such as position sought, location of place of employment, citizenship, residence, habits and moral character, health and physical record, references, and experience and education. The board maintains that this is not the type of examination contemplated by Section 10, Article XY of the Ohio Constitution. Such section reads:
. “Appointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations. Laws shall be passed providing for the enforcement of this provision.”
Pursuant to this constitutional provision, the General *297 Assembly enacted Section 143.23, Eevised Code, which provides for noncompetitive examinations for temporary appointments. The relevant portions of Section 143.23, Eevised Code, read, until amended in November 1959, as follows:
“Positions in the classified service may be filled without competition as follows:
“(A) Whenever there are urgent reasons for filling a vacancy in any position in the classified service and the commission is unable to certify to the appointing officer, upon requisition by the latter, a list of persons eligible for appointment after a competitive examination, the appointing officer may nominate a person to the commission for noncompetitive examination, and if such nominee is certified by the commission as qualified after such noncompetitive examination, he may be appointed provisionally to fill such vacancy until a selection and appointment can be made after competitive examination; but such provisional appointment shall continue in force only until a regular appointment can be made from eligible lists prepared by the commission, and such eligible lists shall be prepared within 90 days * * *.”
The same provisions exist now in Section 143.23, Eevised Code, as amended, effective November 2, 1959, except that instead of the commission it is now the Director of State Personnel who supplies the list of eligibles.
It is necessary to set out Section 143.23, Eevised Code, as it existed both before and after amendment in 1959, as some of the relators were employed under the older section and some under the amended section. In addition to the amendment of Section 143.23, Eevised Code, a new section, Section 143.013, Eevised Code, was added to the Code on November 2, 1959.
Section 143.013, Eevised Code, reads in part:
“All powers * * * not specifically vested in and assigned to * * * the State Personnel Board of Eeview are hereby vested in * * * and shall be performed by the Director of State Personnel, which powers * * * shall include * * * the following powers * * *:
a # * *
“(B) To prepare, conduct and grade all noncompetitive examinations for positions in the classified state service.”
*298 Thus, Section 143.013 specifically empowers the director to prepare noncompetitive examinations.
Prior to the enactment of Section 143.013, Revised Code, the authority for the commission to prepare such examinations could be found in Sections 143.13 and 143.16, Revised Code.
Section 143.13, Revised Code, read in part:
‘ ‘ The commission shall put into effect rules:
(( :X: ;X-
“(B) For appointment, promotions, transfers, layoffs, suspensions, reductions, reinstatements, and removals therein and examinations and registrations therefor.” (Emphasis added.)
Section 143.16, Revised Code, prior to November 2, 1959, read in part:
‘ ‘ * * * The State Civil Service Commission shall have control of all examinations * *
From a reading of the statutes regarding noncompetitive examining, both before and after November 1959, it is apparent that the authority to create noncompetitive examinations was vested in the commission and now is vested in the Director of State Personnel. Since such administrators have the authority to create such examinations and since they have used their discretion in so creating these examinations, this court will not now substitute its judgment for that of the administrators.
Now, is “Form 45, Revised,” a valid noncompetitive examination?
Webster’s Third New International Dictionary defines examination as “the act or process of examining” and as “an exercise * * # designed to * * * test qualifications.” Then fob low more specific applications regarding tests as examinations. The New Century Dictionary defines examination as an “inspection; inquiry; investigation; formal interrogation; a testing of pupils, candidates, etc.” Thus in its broad sense an examination need not necessarily be a test. An examination is an evaluation of qualifications, and it need not be a test in the sense that scoring is a necessary concomitant. In fact, upon a careful reading of Section 143.23, Revised Code, it is apparent that the noncompetitive examination has a limited pur *299 pose, and that is to provide a quick means of filling a vacancy until a competitive examination can be given. Section 143.23, Revised Code, contemplates that a test will be administered later to compile a list of eligibles, and it is not our concern here that such competitive tests have not been given. See State, ex rel. Conway, v. Taylor, Dir., 136 Ohio St., 174, 177, 24 N. E. (2d), 591, where it is stated that, “there seems to be no reason to construe this requirement as other than the thing it appears to be, namely, a direction to the Civil Service Commission to prepare an eligible list within 90 days.” Therefore, “Form 45, Revised,” is a valid noncompetitive examination.
The board’s next contention is that there are no statutes creating the positions held by relators. Section 143.08, Revised Code, divides civil service into two classes, unclassified and classified. Certain positions therein are specified as being unclassified. Subdivision (B) of Section 143.08, Revised Code, states:
“The classified service shall comprise all persons in the employ of the state and the several counties * * * not specifically included in the unclassified service * *
Hence, any position not exempted in Section 143.08, Revised Code, qualifies as being in the classified service.
The board’s next contention is that relators took examinations for jobs which are different from the jobs which they performed.. Section 143.25, Revised Code, provides for transfers, with the consent of the commission (now the Director of State Personnel), to similar positions in other offices or departments having the same pay and similar duties. Only if further tests or greater qualifications are required is a transfer prohibited without the taking of the necessary steps. It appears that the work done by the relators is similar in nature and can be done without need of further qualifications.
As to relator Camilla Smith, it is argued that her appoint- , ment was improper because she was given the noncompetitive examination after her employment commenced.
As to three of the relators, the effective date of employment and the date of appointment followed the date of the examination. As to Camilla Smith, the effective date of em *300 ployment preceded the date of the examination. However, the date of her appointment followed the date of the examination, and it is the appointment itself which controls and not the effective date of employment. The case of State, ex rel. Lynch, v. Taylor, Dir., 136 Ohio St., 417, 26 N. E. (2d), 207, is cited by the board as being dispositive of the facts as to Camilla Smith. But in that case it does not appear that there was an appointment after the date of the examination. Here there was such an appointment, and Camilla Smith’s employment was procedurally proper.
Since the relators were given valid noncompetitive examinations and were appointed to their positions thereunder, they achieved the status of provisional civil service employees with the rights attendant thereto.
In the case of State, ex rel. Slovensky, v. Taylor, Dir., 135 Ohio St., 601, 602, 21 N. E. (2d), 990, it is said that such a provisional appointee is “entitled to retain his position during good behavior and efficient service, until the establishment of an eligible list, or until his services are terminated by arriving at the mandatory retirement age, or until the abolishment of the position, or a lay-off.” It follows that relators could not be dismissed summarily without cause, and that such dismissals were void. See, also, State, ex rel. Conway, v. Taylor, Dir., supra.
The board contends that the relators’ proper remedy was to follow the administrative procedure set forth in Chapter 119, Revised Code. As stated by Griffith, J., of the Court of Appeals in the instant case, the case of State, ex rel. Brittain, v. Board of Agriculture, 95 Ohio St., 276, 116 N. E., 459, answers this objection. The syllabus in that case states:
“1. The State Civil Service Commission in the hearing of an appeal from an order of removal of an employee, under the provisions of Section 486-17a, General Code (106 O. L., 412), is limited to a consideration and determination of the existence of the statutory ground or grounds upon which the order of removal was based by the appointing authority.
“2. The provisions of that section do not confer upon the commission authority to hear an appeal from an order of removal made by an appointing authority where the employee has not been furnished its reasons for the removal.
*301 “3. The provision of Section 486-1 Za, General Code, that in all cases of removal the appointing authority shall furnish the employee its reasons for the order of removal, is mandatory and the failure of the appointing authority to comply with this provision is fatal to such order and the same is a nullity.”
The board in its brief contends that the remedy of mandamus is not available as a means to recover pay for the time an employee is wrongfully excluded from his position. A long line of cases support this contention. This court’s attitude in such cases is perhaps best stated, as follows, in the case of Williams, Dir., v. State, ex rel. Gribben, 127 Ohio St., 398, 401, 188 N.E., 654:
“Mandamus will not lie to enforce the payment of a claim unliquidated and indefinite in amount. Whatever view may be entertained by this court with reference to the right of the relator to recover in an action at law compensation or salary * * * for the period of exclusion from office * * * we now hold that such question can be considered only in an action at law.”
For the reasons expressed herein we hold:
The former State Civil Service Commission had and the present Director of State Personnel now has authority to create a noncompetitive examination for temporary appointments under Section 143.23, Revised Code, and “Form 45, Revised,” used by the commission and the director, constitutes a valid noncompetitive examination.
A civil service employee of a county who is appointed after taking a noncompetitive examination and after being certified by the Director of State Personnel attains the status of provisional civil service appointee, and such appointee may not be removed except for cause or until a competitive examination for his position is held.
It follows that that part of the judgment of the Court of Appeals restoring relators to their former positions must be affirmed, and that that part ordering the board to submit a payroll to the Department of State Personnel must be reversed.

Judgment affirmed in part and reversed in part.

Weygandt, C. J., Zimmerman, Matthias and Bell, JJ., concur.
*302 Tart and O’Neill, JJ., concur in the judgment so far as it reverses but dissent therefrom' so far as it affirms.
Herbert, J., not participating.